## In re SCHROEDER HOTEL CO.

### READ et al. v. SCHROEDER HOTEL CO.
#### Nos. 5762, 5787.

Circuit Court of Appeals, Seventh Circuit.
Nov. 12, 1936.

John Leekley and James D. Shaw, both of Milwaukee, Wis., for appellants.

Irving A. Fish, J. H. Marshutz, G. R. Hoffman, and E. J. Gross, all of Milwaukee, Wis., for appellee.

Before SPARKS, Circuit Judge, and LINDLEY and BRIGGLE, District Judges.

LINDLEY, District Judge.

In the course of administration of the Schroeder Hotel Company, under reorganization proceedings under section 77A and section 77B of the Bankruptcy Act as amended (11 U.S.C.A. §§ 206, 207), the District Court entered an order enjoining the members of the bondholders' committee, its agents and the owners of the bonds represented by its members, from further communicating with the creditors by mail, orally, or otherwise. From this order this appeal was taken by the parties enjoined.

On November 8, 1935, a special master, to whom had been referred the claim of the bondholders' committee and objections thereto, filed with the District Court his report, in which he discussed at length the evidence before him and presented

492

his findings of fact and conclusions of law. He found that, beginning with the 11th day of October, 1934, the bondholders' committee had made certain misrepresentations to all bondholders—false, deceptive, and misleading statements, not intended to protect or promote the interests of bondholders, but, rather, to delay the proceedings and to induce creditors to refuse to support any plan of reorganization. He found that each of the statements was false and fraudulent; that the members of the committee intended at all times to block approval of any plan of reorganization and to use the bonds deposited with them for the sole purpose of defeating any reorganization. He concluded that the depositary agreement and its provisions thereof, to the extent necessary to prevent the committee from exercising the power to block the reorganization of the debtor, be set aside and that the provisions giving to the committee authority to act as agent for the depositors, be likewise abrogated and revoked.

On December 4, 1935, the court entered an order approving the report of the special master, adopting his findings and conclusions and directing that the provisions of the depositary agreement recommended by the master be canceled, be set aside; that the provisions giving the committee the power to vote for the acceptance or rejection of any plan be vacated; that the committee be permitted no longer to represent bondholders and that it so notify the latter. From this order no appeal was taken, and it must be accepted by this court, therefore, as an adjudication upon the issues therein involved. Even had we the power to review the findings of the court in this respect, the facts could not be reviewed, as the evidence upon which the order was based is not presented to us.

Subsequent to the entry of this order, on December 28, 1935, the debtor filed its petition, asking for a rule upon appellants to show cause why they should not be restrained from communicating further with any creditor of the Hotel Company, basing the prayer for relief upon the contents of a letter mailed by the committee on the 4th day of December, 1935, to all the bondholders. The court issued a show-cause order and, after hearing, on the 20th day of January, 1936, entered its findings and conclusions based upon the findings, conclusions, and order pre-viously entered and upon the further action of the members of the committee subsequent to its entry. The court adopted all the findings of the master upon the previous reference and found in addition that on the 13th day of December, 1935, appellants had sent to the bondholders, a further communication which the court found was misleading and fraudulent, in that it falsely misrepresented the authorship of the letter of the debtor mailed on December 4th; in that it falsely indicated that the members of the committee had not submitted their side of the controversy to the master; in that it falsely indicated that the committee had been disqualified because it was unwilling to support the debtor's plan; in that it falsely stated the committee had filed and supported a plan of reorganization; in that it falsely indicated that the claim of the committee was not acceptable because it did not contain a list of the bondholders; in that it said there seemed to be no controlling reason for disclosing the names of the depositing bondholders, whereas only depositing bondholders, as the committee knew and was advised, had a right to file claims; in its statements as to the findings of the master and of this court as to the letter purporting to be signed by the trustees; and in the statement that the trustee had filed a claim to protect the bondholders.

The court found that each of these statements was made for the purpose of interfering with the exercise of the jurisdiction of the court and to deprive the debtor and its creditors of the right to effect a compromise under the terms of the Bankruptcy Act; that the letter was intended to evade the order of the court of December 4th and to induce the bondholders to file claims, but to take no part in the proceedings, and thus to prevent a vote upon any plan of reorganization and thereby deprive the court of its jurisdiction to determine the propriety of a compromise in accordance with the Bankruptcy Act, and that the committee threatened to write further letters and to give information and advice orally to bondholders, deceptively and falsely for the purpose of interfering with any vote upon any proposed plan of reorganization which might be presented to the creditors, and for the purpose of interfering with the exercise of the jurisdiction of the court for reorganization.

The court concluded that appellants should be enjoined from "further acts calculated to carry out their design to interfere with the exercise of the jurisdiction of this Court and to prevent a vote upon a plan of reorganization in accordance with section 77B of the Bankruptcy Act, and further, that in order to prevent the said committee from further interfering with the jurisdiction of the Court, it was necessary to enjoin them and their agents from further communicating any further information or advice to the creditors of the debtor," and restrained appellants from "communicating directly or indirectly in writing, printing or orally, to any bondholder or other security holder * * * any purported information or advice with regard to the proceedings or actions of this Court." From this order the appeal was prosecuted.

■ The first order, from which no appeal was taken, was based upon evidence not now before us. It is thereby adjudicated that appellants made false, misleading, and fraudulent statements to the bondholders with the intent to defeat any plan of reorganization that might be offered, and thus by improper action to defeat the purpose promoted by section 77B of the Bankruptcy Act as amended, namely, reorganization in accordance with the acts and the orders of the court. As to the correctness of that adjudication, no question can be raised.

The order complained of was based, not only upon the adjudication mentioned, but also upon the further finding that, in spite of the court's admonition in the order previously entered by the court, in order to prevent the carrying into effect of any improper intent of the bondholders' committee, the latter had written immediately thereafter an equivocal letter, the purport and intent of which was again to deceive the bondholders and again to bring about a result whereby they would not vote at all or would vote in order to defeat any plan of reorganization.

The court concluded, from the evidence in the original hearing and the writing of the letter after the first order had been entered, that appellant intended to continue its improper conduct and that to prevent fruition of this intention, it was necessary to enjoin all communications by appellant to creditors.

Obviously, it was a sweeping order. The court as a chancellor might have chosen another method of procedure and directed that no communication should be sent out unless it should first receive the approval of the court. But the court evidently believed that the conduct of appellants was so contumacious and so persistent, that it was its duty as a chancellor to permit no further action upon their part. And we doubt the necessity upon the part of the court, in cases of administrative character, to supervise or pass upon as censor, any or all communications submitted by parties who have been previously found guilty of false, fraudulent, misleading, deceptive statements.

■ The only question, therefore, is whether a court may, in the exercise of its discretion, enter an order of the kind complained of. Precedent must be found in other branches of the law. It does not exist in the decision of any court upon sections 77A and 77B. However, the act is of remedial character and proposes that a debtor and its creditors may have fair and reasonable opportunity to submit plans of reorganization, "so that the debtor may live and the creditors will receive more than is obtainable upon a liquidation sale." Continental Illinois Nat. Bank & Trust Co. v. Chicago, R. I. & P. Ry. Co. (C.C.A.) 72 F.(2d) 443, 451.

■ The act provides "that the judge shall scrutinize and may disregard any limitations or provisions of any depositary agreements, trust indentures, committee or other authorizations affecting any creditor acting under this section and may enforce an accounting thereunder or restrain the exercise of any power which he finds to be unfair or not consistent with public policy and may limit any claims filed by such committee member or agent, to the actual consideration paid therefor." Obviously, the court, in view of the purpose of the act and its express provisions, has the power to make effective the jurisdiction granted by Congress under the constitutional power in bankruptcy and to prohibit acts of parties before it, tending to prevent the exercise of the jurisdiction and the achievement of its purposes. If this power does not exist, the purpose of the law and the jurisdiction of the court to enforce it are defeated. To prevent the attainment of the legitimate ends contemplated "is to defeat the very end the accomplishment of which was the sole aim of the section, and thereby to render its provisions futile." Con-

tinental Illinois National Bank & Trust Co. v. Chicago, Rock Island & Pacific Ry. Co., 294· U.S. 648, 55 S.Ct. 595, 606, 79 L.Ed. 1110.

■ But it is said that to restrain all communications is to restrain free speech. Obviously, all rights under the Constitution and its various amendments must be exercised at all times with reasonable regard for the conflicting rights of others. There is no right so absolute that it may be exercised under any circumstances and without any qualification. Hitchman Coal & Coke Co. v. Mitchell et al., 245 U.S. 229, 38 S.Ct. 65, 62 L. Ed. 260, L.R.A.1918C, 497, Ann.Cas.1918B, 461. The most innocent and constitutionally protected acts may be a step in a wrongful plot, and, if it is such, neither its innocence nor the Constitution is sufficient to prevent the punishment of the plot by law. Aikens v. Wisconsin, 195 U.S. 194, 25 S.Ct. 3, 49 L.Ed.154.

As said in Thomas v. Cincinnati, N. O. & T. P. Ry. Co. (C.C.) 62 F. 803, 822, where it was complained that the right of assembly and free speech secured by the Constitution of Ohio had been violated, the court said: "It would be strange, indeed, if that right could be used to sustain the carrying out of such an unlawful and criminal conspiracy as we have seen this to be. * * * If the obstruction to the operation of the road by the receiver was unlawful and malicious, it is not less a contempt because the instrument which he used to effect it was his tongue, rather than his hand."

In Nann v. Raimist, 255 N.Y. 307, 174 N.E. 690, 693, 73 A.L.R. 669, Mr. Justice Cardozo, then Chief Justice of the Court of Appeals of New York, in discussing an appeal from an injunction order against picketing and peaceful persuasion, said:

" 'Where unlawful picketing has been continued, where violence and intimidation have been used, and where misstatements as to the employer's business have been distributed, a broad injunction prohibiting all picketing may be granted.' Exchange Bakery & Restaurant v. Rifkin, supra, at page 269 of 245 N.Y., 157 N.E. 130, 135. 'The course of conduct of the strikers' is then 'such as to indicate the danger of injury to property if any picketing whatever is allowed.' Ibid.

"Before this action was begun, the defendant had already been restrained in the suit by the Winthrop bakery from acts of violence or disorder, from picketing with false and misleading signs, and from other false and misleading statements. These prohibitions it had violated, or so the trier of the facts has found. It had set upon and beaten innocent workmen. It had falsely asserted that a strike was in progress. By such falsehoods it had driven customers to other bakeries, had forced unwilling proprietors to succumb to its demands, and in so doing had threatened the prosperity and indeed the very existence of its rival.

"Whether the trial court, in view of this record of defiance, would give the defendant still another chance to picket peacefully and in order, was something to be determined in the exercise of a wise discretion. This court may not interfere except for manifest abuse. 'It becomes a question for the judgment of the chancellor who has heard the witnesses, familiarized himself with the locus in quo and observed the tendencies to disturbance and conflict.' American Steel Foundries v. Tri-City Central Trades Council, 257 U.S. 184, 207, 42 S.Ct. 72, 78, 66 L.Ed. 189, 27 A.L.R. 360. One chance the defendant had already been given. It had defied the mandate and abused the privilege. How many more chances was it to have before the court could intervene? An injunction does not issue in such circumstances as punishment for the past. Iron Molders' Union No. 125 of Milwaukee, Wis., v. Allis-Chalmers Co. (C.C.A.) 166 F. 45, 49, 20 L.R.A.(N. S.) 315; Frankfurter & Greene, The Labor Injunction, p. 116. Its only legitimate end is protection for the future."

■ So, here, appellants had once before been restrained from their illegal acts; this admonition of the court they had ignored. The directions of the court they had not complied with. The prohibition of the order they had violated. Consequently, we are unable to say that the chancellor abused his discretion when he refused to give appellants still another chance to communicate improperly and illegally. In the words of Mr. Justice Cardozo, "this court may not interfere except for manifest abuse."

Under the circumstances of this case, where appellants had a wrongful intent and had· abused their privileges, not once but twice, the chancellor was not bound merely to issue another injunction against

further illegal acts, but had the right, rather, to enjoin all further efforts of appellants.

Whether the chancellor will hereafter modify the provisions of his injunctional order upon a showing by appellants · of abandonment of their former position and evincement of an intention to proceed in accordance with the dictates of good faith is a question for the future.

The order is affirmed.