## In re HERMITAGE BLDG. CORPORATION.

## ENGELHARDT v. HERMITAGE BLDG. CORPORATION.

### No. 6624.

Circuit Court of Appeals, Seventh Circuit.

Dec. 13, 1938.

Leo A. Ferdinand and Joseph B. Gilbert, both of Chicago, Ill., for appellant.

Austin L. Wyman, of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and MAJOR, Circuit Judges.

SPARKS, Circuit Judge.

In this appeal it is sought to reverse an injunctive order of the District Court, growing out of a reorganization proceeding under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The order restrained appellant, as an original common stockholder of the debtor, from instituting or prosecuting any action in any court against the debtor based or founded upon appellant's stock, and from enforcing in any manner any right or power arising out of the terms of the approved plan of reorganization, without first obtaining permission of the District Court.

The debtor filed its petition for reorganization under section 77B on September 18, 1934, and filed its proposed plan on December 12, 1934, which was confirmed on February 25, 1935. By its terms the debtor's capital stock was to be changed from 250 shares of common stock, each having a par value of $100, to 945 shares, divided into two classes consisting of 250 shares, no par value, of common stock, and 695 shares of preferred stock, each having a

par value of $100. The preferred holders, who were the original bondholders, were to receive, when declared by the directors, non-cumulative dividends at the rate of five dollars per annum, and upon dissolution of the corporation, whether voluntary or involuntary, they were to receive $100 per share. The bonds and trust deed securing them were to be cancelled, and one share of the preferred stock issued for each $100 par value of the bonds. The common stock was to be held in the treasury of the corporation, and delivered to the holders of the old common stock at any time within five years from the effective date for the creation of the preferred stock, provided all the preferred stock should have been retired or redeemed.

The plan further provided that H. L. Patterson, one of the holders of the old common stock, should be a director of the corporation for five years, and the holders of the preferred stock agreed to vote for his election and re-elect him as such director during that period. The plan also provided that the debtor's articles of incorporation should be amended to incorporate all the changes set forth in the plan.

By amendment of the plan on December 21, 1936, the preferred shares, by agreement, were increased in number to 701. On April 20, 1937, there was a proposal, adopted on May 12, 1937, to further amend the plan by reducing the preferred shares to $70 per share, in order to create a paid in surplus of $30 per preferred share, and it was further provided that new common stock be issued in exchange for the old common stock, share for share, and should be endorsed in blank by the person or persons to whom issued, and held in the debtor's treasury to be delivered to the person or persons who should be entitled to its delivery at any time within five years from May 23, 1935, provided that all the preferred stock should have been retired or redeemed; and if not so retired or redeemed, the common stock should be cancelled. It was clearly stated that the dividends on the preferred shares should be paid out of the earnings of the debtor.

The final decree was entered on June 4, 1937, by the terms of which the plan as amended was declared to have been carried out, the reorganization proceedings closed and terminated, and the debtor and its assets were released from the jurisdiction of the court. The decree, however, enjoined all the owners of the old common stock from instituting any actions at law or in equity in any court, based on such stock or any interest therein, or from enforcing any right or power arising by reason of the ownership of such stock, inconsistent with the provisions of the approved plan.

On February 25, 1938, appellant filed his intervening petition in the reorganization proceedings, in the same court and before the same district judge who had entered the final decree on June 4, 1937. From this petition it appears that at the inception of the reorganization proceedings appellant owned 46 shares of the original common stock of the debtor; that in July 1937 he, with other holders of the debtor's original common stock, surrendered his old stock certificates to the debtor, and became entitled to certificates for a like number of shares of the new common stock of the reorganized debtor, but that they were never issued; that on January 11, 1938, appellant with two other original common stockholders, named E. A. Nowak and H. L. Patterson, filed a stockholders' bill in the Circuit Court of Cook County, Illinois, against A. H. Eich and W. R. Windsor, directors of the debtor, to compel the issuance of the new common stock in accordance with the provisions of the amended reorganization plan, and for the restitution to the debtor of dividends alleged to have been illegally declared and paid by the defendant directors in violation of the amended plan and of the Illinois Statutes. The defending directors moved to strike the bill on the ground that such plaintiffs were not stockholders as contemplated by the plan; that if they were entitled to the relief sought, their remedy was by petition to the District Court; and that the state court proceedings were barred by the injunctive order in the bankruptcy decree. Thereupon the state circuit court directed appellant and his co-plaintiffs to present the matter to the District Court for instructions upon the following two questions: (1) Does the District Court of the United States have jurisdiction of the matters raised in the suit to the exclusion of the state court? (2) Are the plaintiffs in the suit stockholders of the Hermitage Building Corporation? Appellant's intervening petition here was filed pursuant to that direction of the state court.

In appellee's answer to appellant's intervening petition it is admitted that cer-

tificates for a total of 239 shares of the original common stock were surrendered to the debtor, whereas, according to the plan 250 shares should have been surrendered; that it was ready and willing to issue common stock in accordance with the plan, that is to say, it was to be endorsed in blank and turned over to the debtor by the persons in whose names it was to be issued. The answer further alleges that both the plan and the Statute of Illinois contemplate and provide that the shares of common stock thus endorsed and held in the debtor's treasury, are in effect treasury stock, and are not entitled to be voted. Hence it says that the endorsers are not stockholders of the debtor. The answer denied that appellant was entitled to any relief other than to have issued to him a certificate for 46 shares of the present stock, which he should immediately endorse in blank and surrender to the debtor, in accordance with the plan. The answer asked for a finding and order that appellant was not a stockholder, but that he merely had a right, with the other holders of the old common stock, to acquire the new common stock upon redeeming the new preferred stock according to the terms of the approved plan.

After a hearing the court, on March 30, 1938, found that it had jurisdiction of the subject matter and of the parties; that the persons entitled to acquire the new common stock were not entitled to vote it until they acquire it by redeeming or retiring the new preferred stock. It was then ordered that the persons holding the right to thus acquire the new common stock be permanently enjoined from instituting, or continuing any proceedings in any court, against the debtor, or its property, or its successors, based upon the stock involved, and from enforcing in any manner any right or power arising under the confirmed plan, without first obtaining the permission of the District Court; all to the end that all rights and powers arising by reason of the claim of ownership of the stock in question inconsistent with the approved plan should cease.

It is first contended by appellant that the District Court was without jurisdiction to enter the injunction of March 30, 1938. There is no merit in this contention. Section 2(15) of the Bankruptcy Act, 11 U.S.C.A. § 11(15), authorizes the court to make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of the Act. While this provision has been construed to authorize the injunctive power of the court only where the one enjoined is interfering with property which is in the actual or constructive possession of the bankruptcy court, yet this limitation does not prevent that court from protecting and enforcing its own decrees, nor does it authorize a state court to review and alter the terms of the bankruptcy decree. The original decree in this case quite properly enjoined appellant from doing the things he subsequently sought to do in the state court. That court without going further directed him to seek instructions from the bankruptcy court. He sought no further order in the state court, nor did he appeal from the one that was made. However, he voluntarily sought and was granted leave to intervene in the bankruptcy case as shown by his petition hereinbefore set forth, and presented the same questions which the state court had directed him to present. He thereby gave the bankruptcy court jurisdiction of his person. We think there can be no doubt that that court had jurisdiction of the subject matter, notwithstanding the fact that the final decree had dismissed the debtor and stated that the plan had been carried out. In a certain sense this was true so far as the debtor was concerned. There was perfect agreement as to what should be done, and the court had no reason to believe it would not be done, although it might require five years in order to determine whether the old stockholders would ever receive the new common stock, or whether it would be cancelled for failure to redeem or retire the preferred stock. The plan was agreed upon and the reorganization of the debtor was perfected, but it was not completely executed, so as to determine the identity of the stockholders and their interests, nor could it be until it was determined whether the preferred stock would be redeemed or retired within five years. Until that fact should be determined the bankruptcy court, under the facts here presented, had jurisdiction of the subject matter to protect and enforce its decree. See In re Ohio Copper Mining Company, D.C., 241 F. 711; Slaughter v. C. C. Slaughter Co., 5 Cir., 48 F.2d 210; In re Schroeder Hotel Company, 7 Cir., 86 F.2d 491. That it intended to retain such jurisdiction is clear from the permanent injunctive order of the

original decree, the violation of which might be raised at any time.

Furthermore, appellant's petition informs us that the plan was not carried out, because, as he alleges, the new common stock was not issued by the debtor, and tendered to appellant for his endorsement in blank, as contemplated by the plan. If this be true, it is obvious that the District Court had jurisdiction to see that the plan was complied with. Appellee concedes that such stock was not issued or tendered for endorsement, but as a reason therefor it avers that according to the plan the entire issue of the old common stock was to have been surrendered to the debtor, and eleven of such shares had not been surrendered. It further alleges a readiness and willingness to issue the new common stock in accordance with the plan, to be endorsed in blank by the persons in whose name it is issued, and turned over to the debtor.

■ Appellant insists that the District Court exceeded its jurisdiction in requiring its permission before any suit could be filed in a state court against the debtor. The order is not that broad. It only enjoins such suits as will interfere with the rights and interests relative to the old common stock of the debtor, as fixed by the decree of the bankruptcy court. This it had the right to do. The order from which the appeal is taken did not materially alter the first order. It merely attempted to clarify its terms. The injunctive provisions of the last order were not materially different from the first. True, the last order required permission of the District Court to bring or maintain any action therein referred to, but that also is implied in the first order, although not expressly stated. We think the District Court was the proper forum in which to present the questions here raised by appellant, and we feel assured of our conclusion from the fact that appellant voluntarily presented them to that court for solution. See Maloney v. Dewey, 127 Ill. 395, 19 N.E. 848, 11 Am.St.Rep. 131; Woolery v. Grayson, 110 Ind. 149, 10 N.E. 935.

■ The appellant further contends that the court erred in not finding that he was a stockholder of the debtor, and as such was entitled to vote his shares of new common stock. This stock is referred to by appellee as treasury stock, although conceded by it not to be stock strictly of that character, under the Illinois Statute. Obviously, however, the intention of all the parties concerned in this reorganization was to give to this new common stock the status of treasury stock. It did not draw dividends, it was held by the debtor subject to option, and it was to be of no effect until that option was exercised within a given time, and if not exercised the stock was to be cancelled. Clearly it was intended not to be voted until after the preferred stock was redeemed or otherwise retired. In effect the stock was not to be delivered to the parties in whose names it was issued until the debtor's original bonded indebtedness was paid. The original bonded indebtedness is now represented by the preferred stockholders who have a majority representation on the board of directors. As a protection to the original stockholders' interests, one of their number was placed upon the board and under the plan he will continue in that capacity during the period of five years, unless the preferred stock is sooner retired or redeemed. Whether this plan was wise, we have no occasion to inquire. It comes to us with the approval of the court and all parties concerned. We hold that appellant is not the present owner of any part of the new common stock. He merely has a right to become such owner, and until such time he has no right to vote it.

Appellant's petition refers to the payment of illegal dividends. This feature of the case was not supported by evidence, nor was it in issue, and the court did not consider it. No question is here presented with respect thereto. If that question is further pressed we have no doubt the District Court will duly investigate its merits.

The order is

Affirmed.