Ex parte LINCOLN SEIICHI KANAI.

No. 789.

District Court, E. D. Wisconsin.

July 29, 1942.

Perry Stearns, Marvin Fein, and Arthur W. Richter, all of Milwaukee, Wis., for Mr. Kanai.

Carl R. Becker, Asst. U. S. Atty., of Milwaukee, Wis., for the United States Marshal.

DUFFY, District Judge.

The petitioner, a resident of San Francisco, California, is a full-blooded Japanese. He was born in the Territory of Hawaii on December 5, 1908, and is an American citizen.

By Executive Order No. 9066, dated February 19, 1942, the President found that the successful prosecution of the war required every possible protection against espionage and sabotage to national defense material, national defense premises and utilities, and, pursuant to Sec. 4 of the Act of April 20, 1918, 40 Stat. 533, as amended by the Act of November 30, 1940, 54 Stat. 1220, and by the Act of August 21, 1941, 55 Stat. 655, 50 U.S.C.A. § 104, and pursuant to his constitutional authority as commander in chief of the army and navy, authorized and directed the Secretary of War and the military commanders designated by him to prescribe military areas in such places and of such extent as the Secretary of War or the appropriate military commander may determine, from which any and all persons may be excluded, and with respect to which the right of any person to enter, remain in, or leave shall be subject to whatever restrictions the Secretary of War or the appropriate military commander may impose in his discretion.

On March 21, 1942, Lt. Gen. DeWitt, pursuant to Public Proclamation No. 1, did declare the city and county of San Francisco (among other areas) to be designated as Military Area No. 1.

On March 27, 1942, Gen. DeWitt, by Public Proclamation No. 4, did prohibit all persons of Japanese ancestry within Military Area No. 1 from leaving that area after March 29, 1942, without permission or direction.

On March 21, 1942, Congress passed Public Law No. 503, 18 U.S.C.A. § 97a, which provides a penalty, and which reads, in part: " * * * whoever shall * * * leave, or commit any act in any military area or military zone prescribed, under the authority of an Executive order of the President, by the Secretary of War, or by any military commander designated by the Secretary of War, contrary to the restrictions applicable to any such area or zone or contrary to the order of the Secretary of War or any such military commander, shall, if it appears that he knew or should have known of the existence and extent of the restrictions or order and that his act was in violation thereof, be guilty of a misdemeanor * * *."

Proceedings were had before Honorable Floyd H. Jenkins, United States Commissioner for the Eastern District of Wisconsin, wherein a complaint was filed by a representative of the Federal Bureau of Investigation, charging that the petitioner, being a person of Japanese extraction, did leave prohibited Area No. 1 without permission of the military authorities and did remain in the city of San Francisco after May 20, 1942, the date fixed for the evacuation of all persons of Japanese extraction from such area. The transcript of the proceedings before the commissioner shows that the defendant, after being apprised of his rights, admitted the allegations of the complaint and stated that he performed the acts therein charged with the full knowledge that they were in violation of the law. It also shows that hearing was waived. Thereafter, on July 15, 1942, in proceedings before this court upon a petition for a warrant of removal, the petitioner appeared and was advised of his constitutional rights, and he stated that he waived representation by counsel and also waived a hearing. An order of removal was signed on the same day. However, prior to the time that the marshal could transfer the petitioner, a petition for a writ of habeas corpus was presented to this court and an order was granted staying the execution of said order and reducing the amount of petitioner's bond.

Petitioner frankly admits that he is a full-blooded Japanese; that he remained

in San Francisco, California, after May 20, 1942, the date set for evacuation of all Japanese from the area of San Francisco; and that he left prohibited Area No. 1 without the required permission of military authorities. He stated he left said area on or about June 1, 1942, knowing he was supposed to obtain permission from the military authorities in such area. However, he challenges the constitutionality of the executive order, and of the proclamations by the military commander, and of Public Law No. 503 of the 77th Congress.

Petitioner argues: "The Military Area No. 1, created by order and proclamation, violates the proper classification, and is discriminatory in that it includes residential, commercial, agricultural and other areas having no relationship to necessary military operations, and the generality and size of the military area are manifestly disproportionate to true military needs, and violate the nondiscriminatory classification required for due process."

■ No federal court should and this court will not set itself up as an authority to say how much area is properly included within Military Area No. 1. This court will not constitute itself as a board of strategy, and declare what is a necessary or proper military area.

■ On December 8, 1941, Congress declared a state of war to be existing between Japan and the United States. A few days thereafter it declared a state of war to be existing between the nations of Germany and Italy and the United States. The field of military operation is not confined to the scene of actual physical combat. Our cities and transportation systems, our coastline, our harbors, and even our agricultural areas are all vitally important in the all-out war effort in which our country must engage if our form of government is to survive. The coast of California has already been under fire from a Japanese vessel of war. Several of the Aleutian Islands have been occupied by the armed forces of that nation. Neither the general public nor the judges of our courts have any information upon which they can properly base a conclusion as to the proper necessary area to be included in military areas or defense zones. The theater of war is no longer limited to any definite geographical area. Saboteurs have already landed on our coasts. This court can take judicial notice of the extensive manufacturing facilities for airplanes and other munitions of war which are located on or near our west coast.

■ Rights of the individual, under our federal Constitution and its amendments, are not absolute. When such rights come into conflict with other rights granted for the protection and safety and general welfare of the public, they must at times give way. There is no individual right so absolute that it may be exercised under any and all circumstances, and without any qualification. In re Schroeder Hotel Co., 7 Cir., 86 F.2d 491; Hitchman Coal & Coke Co. v. Mitchell et al., 245 U.S. 229, 38 S. Ct. 65, 62 L.Ed. 260, L.R.A.1918C, 497, Ann.Cas.1918B, 461. At the present time, the right of our citizens to come and go as they please may be somewhat restricted by the necessity of protecting this nation from our enemies in time of war. The Constitution makes the President of the United States the commander in chief of our armed forces. Const. art. 2, § 2, cl. 1. The power to conduct war is placed by our Constitution in the President and in the Congress.

■ That there is nothing about the executive order or the designation of the military areas, which is unconstitutional, is very certain, considering the necessities and the exigencies of war which has already struck upon our Pacific coast. However, should petitioner persist in his contentions as to the unconstitutionality of the executive order and proclamations, for the violation of which the petitioner is restrained, it should be resolved by the court before whom the petitioner will be tried. Stallings v. Splain, 253 U.S. 339, 345, 40 S.Ct. 537, 64 L.Ed. 940.

The petition for the writ of habeas corpus will be denied, the writ quashed, and the petitioner remanded to the custody of the United States Marshal.