## In re DEVONSHIRE HOTEL, Inc.
### No. 66751.

United States District Court
N. D. Illinois, E. D.
March 9, 1951.

Quealy, Staub & Arthur, Chicago, Ill., for plaintiff.

Shulman, Shulman & Abrams, Chicago, Ill., for defendant.

CAMPBELL, District Judge.

The instant matter evolves from a corporate reorganization. The Chicago Title and Trust Co. (petitioner) seeks (a) to enjoin an action commenced by the LaSalle National Bank (respondent) and now pending in the Circuit Court of Cook County, Illinois; and (b) for a determination by this Court of the basic issue raised by the Circuit Court action, namely, the ownership of certain funds now held by petitioner.

The Plan of Reorganization confirmed in these proceedings by the late Judge Woodward provided for the issuance of 5,145 shares of the capital stock of the Debtor and for the delivery of such shares to three Voting Trustees named by this Court. The Plan further provided that the Voting Trustees should issue Trust Certificates in exchange for outstanding bonds of the Debtor at the rate of one Trust Share for each $100 principal amount of bonds.

In due course, all but $2,400 principal amount of bonds were surrendered for cancellation, and the holders of the bonds so surrendered received Trust Certificates aggregating 5,121 Trust Shares. Of the bonds surrendered, 95% were turned in by a Bondholders' Protective Committee which had previously received them from the respective holders and had issued in exchange therefor transferable Certificates of Deposit.

As was customary, the bonds had been deposited with the Committee under the terms of a Deposit Agreement which authorized the Committee to take such action as it might deem necessary or appropriate in order to protect the mutual interests of the depositors. The Deposit Agreement provided for the appointment of a Depositary, and petitioner was named Depositary.

When the Committee tendered its deposited bonds in exchange for Trust Certificates, it furnished the Voting Trustees with a list of its depositors and directed that the Trust Certificates issuable in exchange for Committee bonds be registered in the names of such depositors. This was done. The Trust Certificates were delivered to the Committee's depositary, and the Committee notified its depositors to surrender their Certificates of Deposit in exchange for the Trust Certificates registered in their respective names. In due course all except 21 depositors made the exchange. Those 21 were entitled to receive a total of 48 Trust Shares. Trust Certificates for that number of shares were actually issued in their names and delivered to the Committee's depositary.

The Committee's notification to its depositors to exchange their Certificates of Deposit for Trust Certificates was mailed June 3, 1939. In its letter the Committee stated that the successful completion of the reorganization made further action by the Committee unnecessary; that no further transfers of Certificates of Deposit would be recognized after June 9, 1939; and that the Deposit Agreement would be terminated "as to the bonds of this issue" on June 8, 1939.

On June 4, 1942, a Final Decree was entered in the reorganization, providing in part: "10. That all Voting Trust Certificates not heretofore delivered in exchange for Bonds as provided in the Plan, shall continue to be held by Chicago Title and Trust Company, as Agent under the said Trust Agreement dated February 17, 1939, relating to the capital stock of Devonshire Hotel, Inc., or by the successor of said Chicago Title and Trust Company, as such Agent, for delivery to the persons entitled thereto under the Plan, and upon the termination of said Trust Agreement all Voting Trust Certificates which have not theretofore been distributed shall be cancelled and the distributable portion of the property held under said Trust Agreement applicable to such exchanged Voting Trust Certificate shall be held by said Agent, or its successor, or by Devonshire Hotel, Inc., for delivery to the persons entitled thereto; provided, however, that any such Voting Trust Certificates (or the proceeds thereof) which have not been distributed within five (5) years from the date of entry of this decree shall be delivered to said Devonshire Hotel, Inc., or its successors or assigns, to be and become the property of said Devonshire Hotel, Inc."

Early in 1950 the Voting Trustees were negotiating a sale of all the issued and outstanding stock of the Debtor. During the course of the negotiations they instructed the petitioner, which was acting as their agent for the transfer of Trust Certificates and for the disbursement of dividends, to take the following action:

(a) To surrender for cancellation all Trust Certificates which had not theretofore been issued in exchange for bonds;

(b) To surrender for cancellation the Trust Certificates issued in the names of Committee depositors who had not yet taken delivery of such Certificates by surrendering their Certificates of Deposit; and

(c) To return all dividends previously declared and paid on both groups of Trust Certificates.

Petitioner complied with these directions insofar as the first group of Trust Certificates was concerned and delivered to the Voting Trustees for cancellation a Trust Certificate for 24 Trust Shares. This Certificate had been issued in the name of the petitioner and had been held by it pending the surrender of $2,400 principal amount of bonds not theretofore tendered for exchange. Since the bonds were bearer instruments, the names of the holders thereof were not known and Trust Certificates could not be issued in their names. The petitioner also delivered to the Voting Trustees a check for the dividends previously declared and paid on the 24 Trust Shares held for issuance in exchange for bonds.

With respect to the second group of Trust Certificates (those registered in the names of Committee depositors) the petitioner advised the Voting Trustees that it could not comply with their request because those certificates had actually been issued in exchange for bonds and been delivered to the Committee's depositary, so that the petitioner had no control over them and no right to demand their return.

Prior to the consummation of the sale of the stock of the corporation, the corporation executed and delivered to respondent an assignment of its right, title and interest, if any, in the second group of Trust Certificates, the dividend distributions theretofore made with respect thereto, and any proceeds applicable thereto by reason of any sale of the Debtor's stock.

Following the petitioner's refusal to surrender the second group of Certificates and the applicable dividends, the respondent filed suit in the Circuit Court of Cook County, as mentioned above. The present petitioner moved to dismiss the complaint, and the judge of that court continued the cause in order that the present petition might be presented to this Court to determine the jurisdictional question.

The petition and answer present two basic issues: (1) Does this Court have jurisdiction to entertain the petition and to determine the issues raised thereby? (2) If this Court decides that it does have jurisdiction, who is entitled to the funds now held by petitioner?

It is the petitioner's position that the Court has jurisdiction and that the funds held by petitioner belong to the holders of the outstanding Certificates of Deposit. On the other hand, respondent contends that this Court has no jurisdiction and that, in any event, the funds should be paid to it because of the provision in the Final Decree relating to the cancellation of unexchanged Certificates.

In support of its contentions that this Court has jurisdiction to hear and determine the issues raised by the petition, petitioner relies principally upon the following three authorities: (a) In re Hermitage Building Corporation, 7 Cir., 1938, 100 F.2d 597; (b) Holmes v. Rowe, 9 Cir., 1938, 97 F.2d 537; (c) Shores v. Hendy Realization Co., 9 Cir., 1943, 133 F.2d 738. However, the Court is of the opinion that these cases may be distinguished either on the facts or on the application of the principles of law stated therein.

In the Hermitage case, the reorganization plan provided for the cancellation of outstanding bonds and the issuance of preferred stock in exchange therefor, and for the delivery of new common stock to the holders of old common stock at any time within five years, provided all the preferred stock should have been retired or redeemed; and if not so retired or redeemed, the common stock was to be cancelled. An original common stockholder instituted suit in a state court, wherein, he sought to compel issuance of the new common stock, despite the fact that the preferred stock had not been retired or redeemed. The final decree enjoined all the owners of the old common stock from instituting any actions at law or in equity in any court, based on such stock or any interest therein, or from enforcing any right or power arising by reason of the ownership of such stock, inconsistent with the provisions of the approved plan. After a hearing in the United States District Court, the stockholder was enjoined from maintaining his action in the state court. In affirming the injunction order, the Court of Appeals of this circuit stated: "* * * Section 2 [sub. a] (15) of the Bankruptcy Act, 11 U.S.C.A. § 11 [sub. a] (15), authorizes the court to make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of the Act. While this provision has been construed to authorize the injunctive power of the court only where the one enjoined is interfering with property which is in the actual or constructive possession of the bankruptcy court, yet this limitation does not prevent that court from protecting and enforcing its own decrees, nor does it authorize a state court to review and alter the terms of the bankruptcy decree. * * *" [100 F.2d 599.]

In Holmes v. Rowe, supra, the Court of Appeals of the Ninth Circuit held simply that the District Court, having discharged

an individual debtor in bankruptcy, still retained sufficient jurisdiction to grant an injunction restraining a creditor from levying execution upon a judgment rendered in his favor by a state court against the debtor upon a claim adjudicated in the bankruptcy court.

In Shores v. Hendy Realization Co., supra, in accordance with the provisions of the reorganization plan, the directors of the reorganized company passed a resolution stating that the successful rehabilitation of the corporation had been accomplished and authorizing a stock distribution to the managing officers as compensation for their services. Certain stockholders instituted actions in the state courts wherein they sought to have the stock distribution declared illegal, to require surrender of the shares for cancellation, and for an accounting as to dividends. The District Court enjoined these actions, and the Court of Appeals of the Ninth Circuit affirmed, stating: "Here, the plan was not in fact completely executed when the decree was entered. The question attempted to be litigated in the state court was whether the directors, in making the stock distributions to the management, had acted in conformity with the approved plan, or, to put it in a negative way, whether they were not undertaking to do something which the court had decreed should not be done. The question was one of interpretation. It involved the administration of the plan itself. The court best equipped as well as the one properly entitled to resolve disputes of that kind was the court in which the proceeding had been conducted. As to fundamental questions of interpretation and administration such as these we think the jurisdiction of the bankruptcy court continues whether future consideration of them was expressly reserved or not. Otherwise, interpretations at war with each other no less than with the decree itself may well result. * * *" [133 F.2d 741.]

▬ The Court is unable to perceive in what manner the present controversy involves the protection, enforcement or administration of its prior decree. Stated simply, the decree modified certain original rights and delineated the future status of such rights. There is nothing so ambiguous or unusual about Paragraph 10 of the decree that requires the possession of special knowledge in order to apply its terms. The nature of a bankruptcy decree is no different than that of any other equitable decree, and where the only question is the meaning of words and phrases contained in the decree or the present status of rights fixed therein, any court of competent jurisdiction is qualified to determine such question. The barring order was self-executing, and the rights created thereunder have become fixed by the passage of the requisite period of time. There is no reason to assume that the Circuit Court of Cook County will ignore the clear mandate of the decree.

For the foregoing reasons, the petition for an injunction and for clarification of the final decree, heretofore entered in this cause, is hereby denied.