**SHORES et al. v. HENDY REALIZATION CO. et al.**
**No. 10085.**

Circuit Court of Appeals, Ninth Circuit.
Feb. 24, 1943.

See, also, In re Joshua Hendy Iron Works, 2 F.R.D. 244.

Byrne, Lamson & Jordan and Paul S. Jordan, all of San Francisco, Cal., for appellants.

Marshall P. Madison, Francis R. Kirkham, Gerald S. Levin, Stanley Pedder, Kenneth Ferguson, Percy V. Long, Bert W. Levit, and William H. Levit, all of San Francisco, Cal. (Pillsbury, Madison & Sutro and Long & Levit, all of San Francisco, Cal., of counsel), for appellees.

Before MATHEWS, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge. .

This appeal concerns the jurisdiction of the district court, sitting in bankruptcy, to entertain a supplemental suit for the interpretation and protection of its decree confirming a plan of corporate reorganization.

Appellee Hendy Realization Co., formerly the Joshua Hendy Iron Works, is a California corporation. Until the sale of its plant in 1940, it had for many years been engaged in the machinery and foundry business at Sunnyvale. In 1935, the corporation being then in receivership, an involuntary petition in bankruptcy was filed at the instigation of creditors and proceedings were had for reorganization pursuant to §§ 77A and 77B of the Bankruptcy Act, 11 U.S.C.A. §§ 206, 207. A plan of reorganization was proposed. At the hearings thereon appellants Shores and Behneman appeared as stockholders, the former to accept and approve the plan, the latter to oppose it. At that time the corporation was financially in a bad way. During the previous twenty months' operations it had lost $183,000, its physical plant was in need of replacement or repair, and it had outstanding obligations of $644,732 plus accrued interest. It was in fact insolvent and its stock worthless. The corporate books did not reflect actual values or conditions.

The plan of reorganization, which the creditors accepted and the court confirmed, provided for the scaling down of obligations to the extent of 10 or 15%, depending upon whether they were secured or unsecured. The creditors received for these reduced obligations long-term notes bearing a lesser rate of interest. Paragraph 6-G of the approved plan provides the subject matter of the present controversy. The paragraph is copied on the margin.[1] In conformity with the provision therein all shareholders except Behneman deposited their stock with the directors of the corporation. Behneman did not deposit his shares until June 1940.

---

[1] "G. Capital stock.

"4425 shares of the capital stock of the debtor corporation are now outstanding, said shares having a book value of $212,898.51, but no actual value.

"In consideration of the extensions granted by the creditors and of the reduction of their claims in the sum of $73,853.06, as aforesaid, the stockholders shall appropriately endorse and deliver the stock held by them to the Board of Directors of the debtor corporation, appointed as hereinafter provided, to be held by said Board as follows:

"1. 50% of the shares so deposited by each stockholder shall be held in trust and voted by said Board for a period of 5 years, and thereafter until the extended obligations are fully paid, so as to leave the management of the debtor corporation during such period in the hands of its creditors. The Board shall have full power to vote said stock, including the power to vote for a reorganization of the capital structure of the debtor corporation so as to provide at any time, for an issue of one or more classes of preferred stock and the exchange therefor of any part or all of the unsecured liabilities of the debtor corporation. Upon the expiration of 5 years and the payment in full of the extended obligations, such shares shall be returned to their respective owners.

"2. The remaining 50% of the shares so delivered by each stockholder shall be. held by said Board free and clear of any claim, right, title, or interest therein by such stockholder, to be distributed by said Board, in its sole discretion, either in whole or in part, to the managing officers thereof, as a reward for management and the successful rehabilitation of the company's affairs."

Appellees Bassick, Hyland, and Levit served as managing president and vice presidents, respectively, from the confirmation of the ·plan in March 1936 until November 15, 1940, receiving only partial compensation for their services in the understanding that, as soon as the affairs of the corporation warranted, they would receive supplemental cash bonuses and that upon the rehabilitation of the corporation the shares held by the directors as voting trustees would be distributed in conformity with the provisions of the quoted paragraph. While minor bonuses were disbursed during this period, it was understood that these officers would ultimately be paid what was coming to them by a distribution of cash and the stock aforesaid. The financial health of the corporation steadily improved under the direction of its new officers. Between June 1936 and November 1940 the corporation, after adequate deductions for interest and depreciation, had a net income of almost $200,000 and had paid off more than 50% of its receivership obligations. Its net worth had risen from a deficit of $61,787 to a positive worth of $206,330. In addition, the plant equipment had been renovated.

On November 4, 1940, the board of directors[2] granted an option to McDonald & Kahn, Inc., to purchase the Sunnyvale plant for $426,000 in cash. No objection was interposed by any stockholder, and the option was shortly exercised. On November 19, 1940, in accordance with the terms of sale, the corporate name was changed from the Joshua Hendy Iron Works to Hendy Realization Co.

On December 4, 1940, the board made a cash distribution to various officers and employees of the company, including Bassick, Hyland, and Levit. These distributions, so far as concerns these three officers, were considered as partially compensating them for their services. In this way Bassick received $40,000, and Hyland and Levit $20,000 each. In the subsequent proceeding from which this appeal was taken the court found that the cash distribution, taken either alone or with the salaries and bonuses previously paid, did not fully compensate these officers for their services.

On December 20, 1940, a resolution was passed authorizing the distribution to these three men of the 2,212½ shares of stock held by the directors pursuant to subdivision 2 of paragraph 6-G of the plan. The resolution stated that it was passed pursuant to the plan and that the conditions thereof, namely, the successful rehabilitation of the corporation, had been fulfilled. The resolution further stated that the participants in the stock distribution had agreed, as a condition to receiving the shares, to waive the right to receive any dividends or distribution upon the stock out of the first $85,848 available for dividends or distribution, in dissolution or otherwise, so that the named sum might be prorated and distributed solely to the beneficial owners of the remaining shares, these shares being still in the hands of the directors as voting trustees. The purpose of the waiver was to equalize the liquidating dividends as between the officers on the one hand and the beneficial owners of the remaining stock on the other. Upon receipt of the waivers the board distributed the shares among the three officers. The court found that neither the cash payments nor the stock distributions were excessive or unreasonable as compensation.

On December 21, 1940, it was voted voluntarily to dissolve the corporation and proceedings were commenced to that end. On the same day the board declared a first liquidating dividend of $85,848, or $45 .per share upon the shares beneficially owned by the old stockholders. Shores and Behneman, along with the other stockholders, had notice of these proceedings, and each claimed and received the liquidating dividend without objection. The trial court, in the proceeding subsequently instituted, found that the stock distribution to Bassick, Hyland, and Levit was pursuant to the order, authority, and direction of the plan of reorganization.

Prior to the distribution, Behneman informed the directors that in his opinion the affairs of the company had not been successfully rehabilitated, and he requested that he be notified in advance of any stock distribution. In January 1941 he began an action in the state court asking that the stock distribution be declared illegal, that the officers be required to surrender the shares for cancellation and that the directors be compelled to account for any dividends thereon. He alleged that the managing officers had been fully compen-

---

[2] Bassick was the only one of the officers concerned who was a member of the board. He did not participate in the voting on any of the controverted matters.

sated and that the corporation had not been rehabilitated within the meaning of the plan of reorganization. Shortly thereafter Shores filed an almost identical action, also in the state court. This latter suit was removed to the court below and motion to remand was denied.

On February 19, 1941, the corporation and the other appellees, including Bassick, Hyland, and Levit, filed a petition in the proceeding for corporate reorganization, setting forth the foregoing facts and praying for an order effectuating and protecting the reorganization decree. Later in the same month Behneman filed in the state court an action for supervision over the corporation's dissolution. There followed further jockeying for position which we need not stop to describe. Enough to say that the district court temporarily enjoined Behneman from proceeding with his actions elsewhere; and the court approved, over objection, the report of a special master recommending that jurisdiction be taken of appellees' petition. The removed "Shores" case was ordered consolidated with the pending petition in the reorganization proceedings, this being done pursuant to stipulation of the parties. Judgment was thereafter rendered in favor of appellees; the court finding that it had jurisdiction over the subject matter of the action, and that appellees had properly complied with the plan of reorganization. The state court suits were permanently enjoined.

■ 1. By the final decree in the reorganization proceeding, entered in January 1937, there was no express reservation of jurisdiction.[3] Appellants contend that the effect of the decree was to close the case and to terminate jurisdiction, except as regards attacks upon or efforts to obstruct or interfere with the plan as confirmed and approved. They say that they have not attacked or sought to obstruct— that their suits were brought merely for the purpose of having the state court determine whether a successful rehabilitation of the Hendy Company had or had

not been accomplished within the true intendment of the reorganization plan.

The statute (subdivision h of the former § 77B) provides: "Upon the termination of the proceedings a final decree shall be entered discharging the trustee or trustees, if any, making such provisions as may be equitable, by way of injunction or otherwise, and closing the case."[4]

While no case has been cited determinative of the precise point raised, several dealing with aspects of the jurisdictional problem have arisen in the Seventh Circuit.[5] Some of these decisions contain broad language indicative of the view that matters not specifically reserved can not be considered after the final decree. The situation presented in In re Hermitage Bldg. Corporation, supra [note 5], is analogous to the one before us; and it was there held that the bankruptcy court had continuing jurisdiction to see to it that the reorganization plan was complied with, despite the fact that the final decree had dismissed the debtor and stated that the plan had been carried out. And compare Holmes v. Rowe, 9 Cir., 97 F.2d 537.

Here, the plan was not in fact completely executed when the decree was entered. The question attempted to be litigated in the state court was whether the directors, in making the stock distributions to the management, had acted in conformity with the approved plan, or, to put it in a negative way, whether they were not undertaking to do something which the court had decreed should not be done. The question was one of interpretation. It involved the administration of the plan itself. The court best equipped as well as the one properly entitled to resolve disputes of that kind was the court in which the proceeding had been conducted.[6] As to fundamental questions of interpretation and administration such as these we think the jurisdiction of the bankruptcy court continues whether future consideration of them was expressly reserved or not. Otherwise, interpretations at war with each other no less than with the decree itself may well result. Consult Gerdes, Cor-

---

[3] Part 16 of the decree declared that the proceedings "be, and the same hereby are, terminated and closed; such termination and closing to be for all purposes final upon the filing herein of receipts," etc.

[4] See 11 U.S.C.A. § 628.

[5] In re Diversey Bldg. Corporation, 1937, 7 Cir., 90 F.2d 703; In re Argyle-Lake Shore Corporation, 1938, 7 Cir., 98 F.2d 372; In re Corona Radio & Television Corporation, 1939, 7 Cir., 102 F. 2d 959; and In re Hermitage Bldg. Corporation, 1938, 100 F.2d 597.

[6] The same judge who had presided in the reorganization proceeding heard the supplemental suit.

porate Reorganizations, Vol. 3, § 1147, p. 1828.

■ 2. The individual appellees had not been parties to the reorganization proceeding prior to the filing of the petition in February 1941. It is claimed that they are not proper parties now because none of them has ever intervened or been granted the right to intervene. The argument is that under subdivision c (11) of § 77B the right to be heard is conditioned upon intervention, except only as to the appointment of a trustee or as to the confirmation of a plan.

While the procedure for intervention outlined in Rule 24 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, was not followed, the petition in which appellees joined fully stated the grounds and facts upon which relief was asked. We think the failure to comply literally with the rule has not resulted in the invasion or disregard of any substantial right. The point raised is purely technical. As a matter of fact the question of the right of these individuals to intervene was directly presented to and ruled upon by the special master and the court.

■ 3. It is contended that the court lacked jurisdiction of the removed "Shores" action in that there was no diversity of citizenship and no federal question presented. There are authorities supporting the proposition that the cause was removable,[7] but we believe it unnecessary to decide the point. Whether or not the action was properly removed is a question of no more than academic interest. The court had jurisdiction of appellees' petition, and since the issues in the two suits were identical the judgment below was determinative of the controversy. A remand of the Shores case could result only in the further prosecution of it being enjoined immediately.

■ 4. The court found that the salaries, bonuses, and cash and stock distributions made to Bassick, Hyland, and Levit constituted fair and reasonable compensation for the services of these managing officers. Appellants do not directly attack the finding, but they do assail the conclusion that the directors were warranted in making the stock distribution. They say that paragraph 6-G of the plan contemplated the continuance of the corporation as a going concern. The court, however, was of the belief that the term "rehabilitation" as used in the plan which it had approved meant the restoration of the corporation to a condition of solvency, and that rehabilitation had in fact been effected. We see no reasonable grounds for quarreling with that interpretation. Indeed, the whole argument on this point appears to be an afterthought.

■ 5. It is said that the issues raised in the consolidated suits were so narrow as to warrant only the enjoining of actions relating to the distribution of stock, and that in any event appellants should have been left free to prosecute suits in the state courts involving the propriety of the bonus and cash payments. However, the issues framed were not so narrow. The question as to the propriety of these cash distributions was raised in the Shores complaint as well as in appellees' petition, and the respective allegations of the two pleadings were put in issue by the opposing denials. Moreover, the justice of the cash rewards to management had to be determined in order fairly to deal with the issue of the propriety of the stock distribution. The two questions presented facets of a single problem.

We find no error in the record, and the judgment is accordingly affirmed.

[7] First Nat. Bank v. Society for Savings, 4 Cir., 80 F. 581; Woods v. Root, 7 Cir., 123 F. 402; South Dakota Cent. Ry. Co. v. Continental & Commercial Trust & Savings Bank, 8 Cir., 255 F. 941. See, also, Pacific Telephone & Telegraph Co. v. Agnew, 9 Cir., 5 F.2d 221.