In re JOHNS–MANVILLE CORPORATION, et al., Debtors.

JOHNS–MANVILLE CORPORATION, et al., Plaintiffs,

v.

COLORADO INSURANCE GUARANTY ASSOCIATION, Defendant.

Bankruptcy Nos. 82 B 11656 (BRL) to 82 B 11676 (BRL). Adv. No. 88–5773A.

United States Bankruptcy Court, S.D. New York.

Oct. 6, 1988.

Herbert S. Edelman, Levin, Weintraub & Crames, New York City, for plaintiffs.

Stephen W. Seifert, Fairfield and Woods, Paul D. Renner, Renner & Rodman, Denver, Colo., Chester B. Salomon, Salomon, Green & Ostrow, LeBoeuf, Lamb, Leiby & MacRae, New York City, for defendant.

David W. Koller, Lynberg & Watkins, Los Angeles, Cal., for AIG Companies.

Matthew Gluck, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Leon Silverman, Legal Representative for Future Claimants.

## MEMORANDUM OPINION (BENCH RULING ABSTRACT OF OCTOBER 6, 1988)

### BURTON R. LIFLAND, Chief Judge.

#### Issues

1) Whether the Bankruptcy Court possesses statutory as well as inherent injunctive power to protect property of the estate and to avoid interference with the administration of the reorganization proceedings pursuant to § 105 of the Bankruptcy Code (the "Code").

2) Whether commencement of the action by CIGA violates the restraints of § 362(a)(1) and (3) of the Code.

### FACTS

On September 6, 1988, Colorado Insurance Guaranty Association ("CIGA") commenced an action against Debtors and certain of their insurance companies in the District Court, City and County of Denver, Colorado, *Colorado Insurance Guaranty Association v. Manville Corporation, et al.* (the "Colorado Action") seeking a declaratory judgment as to its obligations to the Debtors, the Debtors' insurers and the other named defendants.

CIGA is a nonprofit, unincorporated legal entity created by and existing under Colorado law (C.R.S. 10–4–501, *et seq.*), which obligates CIGA to pay the "covered claims" of "insolvent" insurers to the extent specified.

Midland Insurance Company ("Midland") was an insurance company licensed to transact business in many states and which wrote insurance coverage for Debtors' companies. Midland became insolvent in 1986 and was placed into receivership in the State of New York on April 3, 1986. On January 29, 1985, Debtors' entered into a settlement agreement with Midland, however, Midland became insolvent before it

paid the Debtors the sum owed under the settlement agreement.

Transit Insurance Company ("Transit") was also an insurance company licensed to transact business in many states and which wrote insurance coverage for the Debtors. Transit became insolvent in 1985, and was placed into receivership in the State of Missouri on December 3, 1985.

In June, 1986, Debtors approached CIGA in Colorado to assert that CIGA is liable to the Debtors under the provisions of the Colorado Act on account of the insolvency of Midland and Transit. (*See* C.R.S. 10–4–508(1)(b), stating that CIGA is deemed to be "the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent.") As its response, CIGA commenced the aforementioned proceeding in the Colorado Court, purportedly and *inter alia,* in order to obtain a determination of the nature and extent of CIGA's liability to the Debtors under the Colorado Act.

On September 15, 1988, Debtors commenced this Adversary Proceeding to obtain preliminary and permanent injunctive relief to prevent CIGA from continuing its Action in the Colorado Court. The Debtors argue that commencement of the Colorado Action by CIGA is a violation of § 362(a)(3) of the Code in that it seeks to have the Colorado Court exercise control over CIGA's obligations to the Debtors, pursuant to insurance policies which are property of the Debtors' estates under § 541 of the Code. Thus, the Debtors have simultaneous with the filing of this motion filed a Complaint commencing an adversary proceeding against CIGA seeking, *inter alia,* judgment and order permanently enjoining, restraining and staying CIGA from pursuing the Colorado Action, pursuant to §§ 362(a)(3), 1142 and 105 of the Code and Rule 65 of the Federal Rules of Civil Procedure, made applicable pursuant to Bankruptcy Rule 7065. Debtors' allege in their Complaint that CIGA's Colorado Action threatens this Court's exclusive jurisdiction over the administration of the Debtor's

Chapter 11 cases, of the Plan, the Approval Order of 1986 approving settlements with Debtors' insurance carriers and the Confirmation Order. *See MacArthur Co. v. Johns–Manville Corp.,* 837 F.2d 89 (2d Cir. 1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988); (other related confirmation and settlement citations omitted).

## DISCUSSION

### INJUNCTION

Pursuant to 11 U.S.C. § 105(a), "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Thus, the Code provides the Court with broad equitable powers enabling it to preserve its own jurisdiction. *LTV Steel Company, Inc., v. Board of Education of the Cleveland City School District,* 93 B.R. 26, 29 (S.D.N.Y.1988). "[T]he Bankruptcy Court has authority under § 105 broader than the automatic stay provisions of § 362 and may use its equitable powers to assure the orderly conduct of the reorganization proceedings." *Id.* (quoting, *In re Baldwin–United Corp. Litig.,* 765 F.2d 343, 348 (2d Cir.1985); *see also In re Chanticleer Associates, Ltd.,* 592 F.2d 70, 74 (2nd Cir.1979)) ("The Court's power to preserve its jurisdiction by enjoining proceedings that would remove property from the bankrupts estate is fundamental to the scheme of the Bankruptcy Act").

■ CIGA argues that under the law of this Circuit, "in order to issue an injunction under Sec. 105, the debtor must show irreparable harm and either (I) likelihood of success on the merits or (II) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." (Defendant's Memorandum of Authority at 13). However, as applied here, CIGA's assertion is incorrect. The standard was recently construed by the District Court in *LTV,* which held that under § 105(a), under circumstances similar to those now before me, the moving party

need not demonstrate the more rigorous standards for a preliminary injunction under Fed.R.Civ.P. Rule 65 such as irreparable harm. *LTV*, 93 B.R. at 29; *In re Neuman*, 71 B.R. 567, 571 (S.D.N.Y.1987). Instead, the bankruptcy court may "enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case before it." *LTV*, at 29; *In re Johns-Manville Corp.*, 26 B.R. 420, 425 (Bankr. S.D.N.Y.1983), *aff'd*, 40 B.R. 219 (S.D.N.Y.). *rev'd in part*, 41 B.R. 926 (S.D.N.Y.1984); *See Continental Illinois National Bank v. Chicago*, 294 U.S. 648, 675, 55 S.Ct. 595, 605–06, 79 L.Ed. 1110 (1935) ("The power to issue an injunction when necessary to prevent the defeat or impairment of its jurisdiction is inherent in a Court of Bankruptcy, as it is in a duly established Court of Equity."); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1008 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

Furthermore, the Seventh Circuit agreed that limitations on the court's injunctive powers "does not prevent the court from protecting and enforcing its own decrees, nor does it authorize a state court to review and alter the terms of the bankruptcy decree." *In re Hermitage Bldg. Corp.*, 100 F.2d 597, 599 (7th Cir.1938). Similarly, in *Shores v. Hendy Realization Co.*, 133 F.2d 738 (9th Cir.1943), the Court cited the *Hermitage* case in determining that the question of interpretation of the administration of the plan belonged in the bankruptcy court. "The court best equipped as well as the one properly entitled to resolve disputes of that kind was the court in which the proceeding had been conducted. As to fundamental questions of interpretation and administration such as these we think the jurisdiction of the bankruptcy court continues whether future consideration of them was expressly reserved or not." *Id.* at 741; *See also In re Standard Gas & Electric Co.*, 139 F.2d 149, 152 (3rd Cir.1943); *Evans v. Dearborn Machinery Movers Co.*, 200 F.2d 125, 128 (6th Cir. 1952).

It should be noted that in the *Manville* reorganization cases, this Court expressly did retain jurisdiction to determine any and all disputes arising under the Plan, the Trust Agreement, the PD Trust Agreement and the Settlement Agreements under Article X of the Plan.

Even under the irreparable harm standards of this Circuit, (*See Sperry International Trade, Inc. v. Government of Israel*, 670 F.2d 8 (2d Cir.1982)), the Debtors have clearly met the standards and demonstrated that they will be irreparably harmed by the Colorado Action going forward.

CIGA states that "it does not intend to interfere with the Debtors' reorganization process." (Objection to Debtors' Motion at 7). However, the declaration of CIGA's liability under the Colorado Act has much greater implications than merely a state court interpreting its own state laws. This Court agrees with Debtors' assertion that CIGA's Colorado Action "calls into question the propriety of the Approval Order, the Injunction and the Confirmation Order and seeks various interpretations with respect to the orders and rulings of this Court." (Debtors' Memorandum at 7). An examination of CIGA's Complaint undeniably supports Debtors' position. For example, Paragraph 55 of the Complaint states:

> The Injunction may be inconsistent with the provisions of Section 524(e) of the Bankruptcy Code in that it attempts to terminate, or otherwise limit or affect, the potential liability of entities other than defendants on debts discharged directly or indirectly, by the defendants' plan.

Paragraph 56 of the Complaint states:

> Many persons who now, or may in the future, have Other Asbestos Obligations or Policy Claims did not receive actual notice of the entry of the Order confirming the Plan or entry of the Injunction.

Paragraph 57 of the Complaint states:

> Significant doubt exists therefore, about whether the provisions of the Plan and Injunction which purport to protect and benefit Settling Insurance Companies and Settling Insurers can or do, in fact, provide such protection, or whether, in

fact, persons now, or may in the future have Other Asbestos Obligations or Policy Claims which they seek to assert against plaintiff will be able to assert and prevail on such claims against plaintiff or any of its property despite the purported protection of the Plan and the Injunction.

The Complaint filed by CIGA seeks declaratory relief with respect to twenty-three separate claims, including judgment:

Which declares that Plaintiff is entitled to an Order from this Court that, pursuant to the provisions of the Plan, the Injunction, and C.R.S. Section 10–4–508(1)(b), neither plaintiff nor any of its property has any further obligation arising from Policies issued by Midland or any defendants. (See, Fifteenth Claim in CIGA's Complaint).

Which declares that plaintiff is entitled to a declaration from this Court that, pursuant to the provisions of the Plan, the Injunction, and C.R.S. Section 10–4–508(1)(b), all Persons and Governmental Units are stayed and enjoined forever from commencing any action to collect, or collecting, from plaintiff or any of its property any claims, including AH Claims and Property Claims, Interests, Other Asbestos Obligations, and Policy Claims. (See, Sixteenth Claim in CIGA's Complaint).

Which declares that confirmation of the Plan itself, or alternatively, distributions from the Trust or PD Trust to holders of AH Claims, Property Claims and Other Asbestos Obligations pursuant to the terms of the Plan, constitute payment in full, as set forth in the Plan, of all such AH Claims, Property Claims, and Other Asbestos Obligations. (See, Eighteenth Claim of CIGA's Complaint).

Thus, CIGA's statement and arguments that it is merely seeking a declaration in the Colorado Court only as to its liability under the provisions of the Colorado Act, "not under any of the polices issued by Midland or Transit, and not under the Settlement agreement negotiated by the Debtors with Midland before it became insolvent and was placed in receivership," (Objection

to Debtors' Motion at 5) is clearly contrary to the far reaching, robust declarations sought by CIGA in its Complaint. The relief sought in the Colorado Court impermissibly reaches right into the very fabric of the reorganization and its processes.

Furthermore, the analysis applied by this Court in a similar case involving LTV, another debtor in this Court, was recently approved by the District Court and supports this Court's findings that there would be irreparable harm to the estate in this instance. *LTV*, 93 B.R. 26.

In *LTV*, this Court entered an order enjoining the Board of Education of the Cleveland City School District from continuing to litigate the first two counts in its Ohio Complaint pending a determination by this Court as to the nature of the disputed claims and restraining Defendants from proceeding with their stay relief motion in the Ohio Court under 11 U.S.C. Sec. 105, holding that "the defendants' actions threatened to irreparably harm the debtor's reorganization." *Id.* at 29. This Court found that "if each of these entities or recipients were to commence actions similar to the defendants' actions, the Debtors' reorganization efforts would be irreparably harmed [and] the Debtors [might] be subject to inconsistent and conflicting judicial decisions regarding its tax liabilities." Tr. at 148; *LTV*, at 28.

██ Similarly, in this case the reorganization would be irreparably harmed if the Colorado Action was allowed to proceed. Colorado is not the only state in which Debtors will be confronted with the need for a Court to interpret the applicability of the Approval Order, the Plan, and the Injunction. On September 30, 1988, Debtors filed a Complaint in this Court instituting an adversary proceeding against the Delaware Guaranty Association and The Superintendent of Insurance of the State of New York seeking a similar declaration of rights and obligations which CIGA is currently seeking in Colorado.

In view of the Supreme Court's recent denial of certiorari in *MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89 (2d Cir. 1988), *cert. denied*, —— U.S. ——, 109 S.Ct.

176, 102 L.Ed.2d 145 (1988) consummation of the Plan is imminent. The insurance policies and settlement agreements are the cornerstone of the reorganization plan bringing into the estates an amount exceeding $800 million. The need for uniform determination of the applicability of the Approval Order, the Injunction and the Confirmation Order is even more prevalent now in the last hours of this reorganization process. Any inconsistent and conflicting judicial decisions regarding the insurance policies would not merely jeopardize but would undoubtedly destroy six years of negotiations and settlements. Furthermore, CIGA's cause of action not only names the Debtors but also names many of the Debtors' insurance carriers as defendants, thus having the potential of causing great consternation and confusion as to the requirements to the consummation of the settlement agreements as part of the consummation of the Plan, a matter heretofore put at rest by litigation reaching the highest appellate levels.

Based upon the above analysis and even if the Debtors were required to show irreparable injury, this Court grants Debtors' motion for entry of an Order enjoining, restraining and staying CIGA from pursuing the Colorado Action pursuant to § 105 of the Code and Rule 65 of the Federal Rules of Civil Procedure made applicable pursuant to Bankruptcy Rule 7065.

AUTOMATIC STAY

§ 362(a)(1) of the Code, provides that the filing of a petition in bankruptcy operates as a stay against the commencement or continuation of any action against the debtor that was or could have been commenced prior to commencement of the bankruptcy case. Furthermore, § 362(a)(3) operates as a stay, applicable to all entities, of

Any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

Pursuant to § 541 of the Code, the commencement of a case under title 11 creates an estate comprised of all legal and equitable interests of the debtor in property of any kind. The Supreme Court, as well as numerous other courts have recognized that insurance is property. *Burlingham v. Crouse*, 228 U.S. 459, 471, 33 S.Ct. 564, 567, 57 L.Ed. 920 (1913). More specifically, this Court, the District Court and the Second Circuit have all held that the insurance policies involved in CIGA's Complaint filed in the Colorado Court are property of the Debtors' estates. *In re Johns–Manville Corp.*, 40 B.R. 219 (S.D.N.Y.1984); *MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89 (2d Cir.1988), *cert. denied* —— U.S. ——, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988).

CIGA contends that it could not have sued the Debtors for a declaration of its liability to the Debtor until that liability arose after Midland and Transit became insolvent in 1986 and 1985 respectively. Therefore, CIGA argues, it could not have sued the Debtors on that matter before the Debtors' petitions were filed in August of 1982. CIGA concludes that the automatic stay provisions of § 362 do not prevent the filing and prosecution of the Colorado Action. (Objection to Debtor's Motion at 5).

On the other hand, Debtors rely on the fact that CIGA is a legal entity created and existing under the laws of Colorado (C.R.S. 10–4–501, *et seq.*), which obligates CIGA to perform certain duties with respect to "covered claims" of "insolvent" insurers. Pursuant to C.R.S. 10–4–508(1)(b), CIGA is deemed to be "the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent." The Debtors conclude based upon the aforementioned provision that "[p]rior to the commencement of the Chapter 11 cases, CIGA was contingently liable for claims which might be deemed 'covered claims' if any of the Debtors' insurers became insolvent, and therefore, the Action, which is for declaratory judgment only, could have been instituted prior to the commencement of the reorganization cases. As a result, the Action is stayed under § 362(a)(1) of the Code." (Debtors' Memorandum at 4).

This Court agrees with the Debtors' interpretation and application of C.R.S. 10–4–508(1)(b) in determining when CIGA's liability attached under its enabling Act. The provision places CIGA directly into the shoes of the "insolvent insurer as if the insurer had not become insolvent." Thus, if Midland and Transit could have instituted such a proceeding prior to the commencement of the reorganization cases, CIGA is deemed to have had the same ability. Indeed, a sampling of several claims or counts of the Complaint, i.e. claims 1 through 6, clearly show quests for declaratory relief that both Midland and Transit could have instituted prior to the commencement of the reorganization cases or post-petition after application to this Court for relief under § 362(d) of the Code. No such suit or application was ever made by these settling insurers. Certainly, CIGA, for itself, could also have sought leave to institute such an action post-petition and subsequent to the declaration of insolvency of the insurance carriers upon application to this Court for relief under § 362(d) of the Code. As a result, this Court holds that the Colorado Action is subject to the automatic stay.

It is noteworthy, that CIGA in untimely fashion, several years after the insolvency of the insurers now seeks declarations as to its obligations to the Debtors and as to the validity of the Debtors' insurance policies. For instance, CIGA requests the Colorado Court to simply declare that *all* contracts issued to the Debtors *by any and all insurers and reinsurers* are void as being contrary to public policy or that the Debtors are equitably estopped from making any claim against CIGA based upon public policy considerations. (*See* CIGA's Complaint, Twenty–Second and Twenty–Third Claim).

As stated previously, these insurance policies of the Debtor are the fabric which hold together the entire reorganization plan. These properties of the estates as the result of the Approval Order and other settlement agreements will bring into these estates an amount exceeding $800 million. Thus, this Court finds that CIGA's attempt to obtain the declaratory judgment in the Colorado Court will cause irreparable damage to the Debtors and their respective estates, and if continued will totally undermine the reorganization proceedings and frustrate consummation of the Plan.

Therefore, this Court also holds that commencement of the Action by CIGA in the Colorado Court is a violation of § 362(a)(1) and (3) of the Code and for the reasons stated hereinabove the said action shall be enjoined.