**In re JOHNS–MANVILLE CORPORATION, et al., Debtors.**

Bankruptcy Nos. 82 B 11656 (BRL)–82 B 11676 (BRL).

United States Bankruptcy Court, S.D. New York.

March 15, 1989.

Levin & Weintraub & Crames by Michael J. Crames, Herbert S. Edelman, Andrew A. Kress, Allen G. Kadish, and Davis Polk & Wardwell by Lowell G. Harriss, New York City, for debtors.

Donald A. Marshall, P.C. by Donald A. Marshall, Edward Garrigan–Nass, Philadelphia, Pa., for claimant Molette.

Lipman & Weisberg by David M. Lipman, Miami, Fla., for claimant Gruber.

Stumpf, Dugas, Le Blanc, Papale & Ripp by William E. Le Blanc, Donaldsville, La., for claimant Billiot.

Lampkin McCaffrey & Tawwater by Bob Behlen, John Edmund Vitali, Oklahoma City, Okl., for claimant Taylor.

## OMNIBUS DECISION PERMANENTLY ENJOINING VIOLATIONS OF THE CONFIRMED PLAN AND CLAIMS RESOLUTION PROCEDURES

BURTON R. LIFLAND, Chief Judge.

The matter before the Court deals with issues and post plan confirmation activities which impact the very foundation of the Debtors' Confirmed Reorganization Plan.[1] Several parties ("Claimants") had filed various lawsuits around the country naming either the Manville Personal Injury Settlement Trust or a Johns–Manville debtor Corporation as a defendant in clear violation of the Plan, a related Injunction and Channeling Order as well as the Claims Resolution Procedures provided for in the Plan. Although the most egregious violations have been mitigated by withdrawal or voluntary dismissal of such actions, the potential for renewal or repetitive activity of the Claim-

ants or others similarly situated make it essential to address these issues at the present time.

## INTRODUCTION

Johns–Manville Corporation, for and on behalf of itself and the other debtors herein ("Manville" or the "Debtors"), having filed four applications to preliminarily or permanently enjoin: (1) Fredia Marie Washly Billiot, et al. ("Billiot") from proceeding with its suit in the Twenty–Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana, naming Johns–Manville Sales Corp. a defendant and seeking damages for alleged wrongful death pertaining to asbestos-health and related injuries (the "Billiot Action"); (2) Albert H. Molette, Jr. and Hope Molette ("Molette") from proceeding with its suit in the United States District Court for the Eastern District of Pennsylvania naming Manville Corporation a defendant and seeking damages for alleged asbestos-health and related injuries (the "Molette Action"); (3) Bob Taylor and Doris E. Taylor ("Taylor") from proceeding with its suit in the District Court of Oklahoma, naming Manville Sales Corp. a defendant and seeking damages for alleged wrongful death pertaining to asbestos-health and related injuries (the "Taylor Action"); and (4) Gabriel Gruber and Ruth Gruber ("Gruber") from proceeding with its suit in the United States District Court for the Southern District of Florida, Miami Division, naming, *inter alia*, the "Manville Corp, Asbestos Disease Compensation Fund a/k/a Manville Personal Injury Settlement Trust" (the "Trust")[2] a defendant and seeking damages for alleged wrongful death pertaining to asbestos-health and related injuries (the "Gruber Action")[3], and the parties having voluntarily agreed, subject to this

---

1. Ordinarily the Court would presume the reader's familiarity with the manifold proceedings in this well known reorganization or direct the reader's attention to: *In re Johns–Manville Corp.*, 66 B.R. 517, 520 (Bankr.S.D.N.Y.1986); *In re Johns–Manville Corp.*, 68 B.R. 618 (Bankr.S.D. N.Y.1986), aff'd, 78 B.R. 407 (S.D.N.Y.1987), aff'd, 843 F.2d 636 (2d Cir.), cert. denied, — U.S. —, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988).

2. The Gruber Action specifically named the Trust as a defendant thus distinguishing this action from the ones instituted by Billiot, Molette and Taylor.

3. The claimants, Billiot, Molette, Taylor and Gruber shall be referred to collectively herein as "the Claimants". The Billiot Action, Molette Action, Taylor Action, and Gruber Action shall be referred to collectively herein as "the Actions".

Court's approval, to dismiss their respective Actions and the Debtors have thus withdrawn their request for contempt and sanctions, this Court finds and concludes as follows.

### FINDINGS OF FACTS [4]

1. The Johns–Manville Corporation is a "Fortune 500" company, which, together with its subsidiaries and affiliates, operates large, diversified manufacturing, mining, and forest products businesses.

2. Prior to the filing of the Chapter 11 cases, it was the world's largest processor, manufacturer and supplier of asbestos materials and products and a major manufacturer of asbestos insulation materials. Asbestos is a naturally occurring fibrous material with unique properties which historically have made asbestos useful as a fireproofing material, a reinforcement fiber, a thermal insulator, a friction material, and a material useful for military defense purposes. Over time, it was determined that exposure to asbestos was hazardous to human health and could cause a variety of respiratory diseases including lung cancer. Uniquely, a person exposed to asbestos might not manifest symptoms or injury for as long as forty years after the initial exposure. In the late 1960s and the 1970s, as the injuries manifested, and the causal link between asbestos and the resulting illnesses became more apparent, injured parties began to file a variety of law suits against Manville.

3. By 1982, more than 15,000 individuals had commenced asbestos-related suits against Manville in a great multitude of courts in forty-six states. Moreover, an average of over four-hundred new asbestos-related law suits were brought each month against Manville. It was estimated that over the course of time, tens of thousands of similar actions would be brought.

4. On the basis of certain studies and past performance, and with the assistance of scientific research, epidemiological projections and extrapolation, Manville estimated its potential liability over time in such suits to be in the billions of dollars.

5. Reflecting on the asbestos litigation swell from the late 1970s to the early 1980s, and projecting the probability of continued increases in the number of injuries that would manifest and the number of lawsuits that would be filed against it, on August 26, 1982, Johns–Manville Corporation, together with its subsidiaries and affiliates, filed with this Court voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code (the "Code").

### THE REORGANIZATION PLAN

6. The ultimate challenge of these Chapter 11 cases was to formulate a plan of reorganization for the Debtors which would provide for payment to holders of present or known asbestos health related claims ("AH Claims"), and those persons who had not yet manifested an injury but who would manifest symptoms of asbestos-related illnesses at some future time ("Other Asbestos Obligations"). "Through it all, this court, this Debtor, and the parties in interest have had to address societal, legal and economic issues on a scale heretofore unknown to Title 11 proceedings." *In re Johns–Manville Corp.*, 68 B.R. 618, 624–25 (Bankr.S.D.N.Y.1986), *aff'd*, 78 B.R. 407 (S.D.N.Y.1987), *aff'd*, 843 F.2d 636 (2d Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 176, 102 L.Ed.2d 145 (1988).

7. After more than four years of conflict, negotiation and compromise, a largely consensual plan of reorganization was filed. By order dated December 22, 1986 (the "Confirmation Order"), this Court confirmed the Debtors' Second Amended and Restated Plan of Reorganization, as modified (the "Plan"). On October 28, 1988, the Confirmation Order became a final order, and the Consummation Date, as defined in the Plan, occurred on November 28, 1988, when the Debtors commenced making distributions under the Plan.

8. The Plan provides for the establishment of two separate trusts, the Manville Personal Injury Settlement Trust (the

---

**4.** The facts recited herein have been gleaned from the massive record made before this Court during the course of these chapter 11 proceedings.

"Trust") and the Manville Property Damage Trust (the "PD Trust").

9. To fulfill the purposes of the Plan, all AH Claims and Other Asbestos Obligations are channeled to the Trust for liquidation and payment. Holders of AH Claims and Other Asbestos Obligations may proceed only against the Trust to satisfy their claims. They must comply with the Claims Resolution Procedures as set out in the Plan. These claimants may not sue Manville, its subsidiaries or affiliates, and may only commence an action against the Trust in accordance with the Claims Resolution Procedures.

10. Pursuant to the Plan, the Trust was initially funded with more than $700,000,-000 in cash, receivables and insurance proceeds. Beginning in the fourth year after the Consummation Date, the Trust is to receive $75,000,000 per year from Manville for twenty-seven years.

11. The Trust will own or have access to eighty percent of Manville's common stock. The Trust will have the right to draw on up to twenty percent of Manville's profits beginning in the fifth year after the Consummation Date and continuing for as long as is necessary to satisfy obligations of the Trust. Ultimate funding of, and accordingly, disbursements from the Trust are anticipated to exceed $2.5 billion, without ascribing value to the stock and profit sharing components.

12. The Trust is being administered by independent trustees. The effect of the Plan is to enable the reorganized Debtors to continue in the operation of their businesses, make payments to the Trust as provided in the Plan, including the profit sharing, and to allow the Trust ownership of up to eighty percent of the common equity. The Plan is designed to provide the Trust with funding for so long as is necessary to resolve and pay every AH Claim and Other Asbestos Obligation.

THE CLAIMS RESOLUTION PROCEDURES

13. The Plan was created as a result of arduous negotiation and compromise by and among the Legal Representative for future asbestos-health claimants [5], the Asbestos Committee, representatives of property claimants, the Official Creditors' Committee and the Debtors. The Claims Resolution Procedures are the product of negotiation among those engaged in asbestos health litigation and form an important part of the Plan.

14. The Claims Resolution Procedures are crucial to the operations of the Trust so that it may liquidate and satisfy each and every valid claim. The Claims Resolution Procedures contained in the Plan were designed to eliminate costly litigation, including attorney fees and expenses on each side, and the delays inherent in redressing disputes in the judicial system, while preserving a right to jury trial if claim resolution is not obtained. *Each holder of an AH Claim or Other Asbestos Obligation is required to proceed under the Claims Resolution Procedures.*

15. In short, a claimant is required to file a specially designed proof of claim with appropriate medical information and a factual summary sufficient to enable the Trust to evaluate the claim. Within ninety days after the Trust begins to process the claim, the Trust must make a written, good faith offer of settlement based upon its evaluation of the claim. If no settlement can be reached, mediation, binding or nonbinding arbitration may be elected. Failing these procedural prerequisites, the claimant may resort to the judicial system to prosecute his claim.[6]

THE INJUNCTION

16. The permanent injunction provided in Article IX, paragraph 9.2.A(3) of the Plan (the "Injunction") was designed to prevent claimants from interfering with the reorganized Debtors so they are unimpeded from making the payments required under

---

**5.** By Order dated August 14, 1984, this Court appointed a Legal Representative to represent the interests of persons exposed to Manville's asbestos who have not yet manifested asbestos-related diseases.

**6.** The full text of the Claims Resolution Proce-

the Plan.[7]

17. The Injunction is a cornerstone of the Plan. It was created to supplement the discharge and injunction provisions of the Bankruptcy Code, to prohibit the assertion against the reorganized Manville of any asbestos-related liabilities, and to require holders of AH Claims, Other Asbestos Obligations and Property Claims to pursue their remedies against the trusts as provided in the Plan.

18. The Injunction was issued pursuant to this Court's equitable powers under the All Writs Statute, § 105 of the Code[8] to:

[P]reserve the rights of all asbestos claimants by establishing a corpus of funds from which all can collect. In the absence of the Injunction, the intended beneficiaries of the reorganization will certainly suffer. Furthermore, in the absence of the Injunction, one of the central purposes of Title 11, *i.e.* preventing the inequitable, piece-meal dismemberment of the debtor's estate, cannot be achieved.

*In re Johns–Manville Corp.*, 68 B.R. at 625. Thus, the Injunction will help to maximize the amounts which will be available for ultimate payment to asbestos health claimants by preventing the "onslaught of crippling law suits [which] could jeopardize the entire reorganization effort." *In re Johns–Manville Corp.*, 843 F.2d at 640.

19. Under the supervision of this Court, the Debtors and the Asbestos Committee activated a massive multi-media publicity campaign "designed to inform as many future asbestos claimants as possible of the impact of the Manville reorganization upon whatever rights they might have against the Debtor...." *In re Johns–Manville Corp.*, 68 B.R. at 626. The unprecedented notice campaign provided for "national television and radio advertisements, newspaper advertisements in the six leading U.S. and Canadian newspapers and in the largest circulation daily newspaper in each state, the District of Columbia and each Canadian province." *Id.*

THE PENDING LITIGATIONS

20. The four pending litigations which Debtors seek to enjoin may be summarized as follows: (1) The Billiot Action was commenced against Johns–Manville Sales Corp. alleging wrongful death pertaining to asbestos-health and related injuries. Billiot alleged that in or about November 1987, prior to the Confirmation Date, Alexander Billiot was diagnosed as having mesothelioma. (2) The Molette Action was commenced against Manville Corporation alleging asbestos-health and related injuries. Molette alleged that on or about October 22, 1988, Albert H. Molette was diagnosed as having mesothelioma. (3) The Taylor Action was commenced on or about November 23, 1988 against, *inter alia*, Manville Sales Corp. seeking damages for alleged

---

dures is provided as Annex B to the Trust Agreement.

7. Article IX paragraph 9.2.A(3) of the Plan provides in pertinent part as follows:

3. To supplement the injunctive provisions of Section 524 of the Code, staying, restraining and enjoining all Persons and Governmental Units from taking one or more of the following actions for the purpose of, directly or indirectly, collecting, recovering or receiving payment of, on or with respect to any Claims, Interests or Other Asbestos Obligations (other than actions brought to enforce any right or obligation under this Plan, any Exhibits to this Plan or any other agreement or instrument between any of the Debtors and the Trust or the PD Trust, which actions shall be in conformity and compliance with the provisions of the Plan):

(a) commencing, conducting or continuing in any manner, directly or indirectly, any suit,

action or other proceeding (including, without limitation, any thereof in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, any of the Debtors' Subsidiaries, the Canadian Companies or any of the Settling Insurance Companies or any property of the foregoing Persons, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor;

\* \* \* \* \* \*

(e) proceeding in any manner in any place with regard to any matter that is subject to resolution pursuant to the Claims Resolution Facility or the PD Claims Resolution Facility, except in conformity and compliance therewith.

8. 11 U.S.C. § 105 (1979).

asbestos-health and related injuries. Taylor alleged that he has sustained injuries to his lungs and respiratory system and that he has a greater risk of developing cancer than he would have absent the conduct of the named defendants. And, (4) the Gruber Action was commenced against the Trust alleging asbestos-health related injuries. Gruber alleged that in or about June 1988, Gabriel Gruber was diagnosed as having mesothelioma.

21. All of the aforementioned Actions were filed prior to the Claimants' initiation or completion of the Claims Resolution Procedures required by the Plan.

22. A hearing was scheduled in this Court for January 9, 1989 to consider the Debtors' applications for orders (a) enjoining, restraining and staying the Claimants and their counsel from continuing their respective Actions and from taking any other action in violation of the Plan, (b) directing the Claimants to withdraw or dismiss their respective Actions, (c) finding the Claimants and their counsel in contempt of the provisions of the Plan, the Injunction and Confirmation Order, (d) sanctioning the Claimants and their counsel, and (e) granting the Debtors such other and further relief as may be just and proper.

23. Pursuant to orders of this Court dated December 21, 1988, the Claimants and their counsel, their agents, representatives, employees, and any and all other persons or entities acting for or on their behalf, including public officers, were jointly and severally temporarily stayed, restrained, enjoined and prohibited from (a) taking any action in pursuit of or in connection with the Action and (b) taking any other action which may be construed to be in violation of the Plan or otherwise inconsistent with or in contravention of the Order.

24. At the hearing, it was reported to the Court that the Claimants agreed to a) withdraw or voluntarily dismiss their respective actions and b) an extension of the temporary restraint contained in the Order pending such withdrawal or dismissal.

25. As the Claimants have agreed to adhere to the provisions of the Plan and the Debtors have withdrawn their request for a finding and order of contempt and sanctions for the specific violations set forth in the Applications for injunctive relief, no remedial purpose would be served at this time by a finding of a contempt, imposition of sanctions or assessment of costs.

26. The foregoing shall constitute this Court's finding of fact.

## CONCLUSIONS OF LAW

### JURISDICTION

1. The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and 157 and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.) dated July 10, 1984.

2. Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

3. Article X, paragraph 10.1(B), of the Plan provides for the retention of jurisdiction by this Court "[t]o determine any and all disputes arising under the Plan, the Trust Agreement, the PD Trust Agreement, [the Annexes and Exhibits to the PD Trust Agreement] and the Settlement Agreements." The Debtors brought their applications to require compliance with the Plan and to prevent continuance of the Actions in violation of the provisions of the Plan. Thus, pursuant to ¶ 10.1(B) of the Plan and the general power of this Court, the Court retains jurisdiction to determine the instant dispute.

4. The Plan also provides in ¶ 10.1(G) that the Court retains jurisdiction to "enforce and administer the provisions of the Plan...." Pursuant to ¶ 10.1(K), the Court retains jurisdiction "[t]o enforce all orders, judgments, injunctions and rulings entered in connection with the Cases." Finally, pursuant to ¶ 10.1(L), the Court retains jurisdiction "[t]o enter such orders as may be necessary or appropriate in aid of confirmation and to facilitate implementation of the Plan." Therefore, jurisdiction was retained by this Court in particular to enforce the procedures established pursu-

ant to the Plan for liquidating asbestos-health claims against the Trust and generally facilitate the Plan's implementation.

■ 5. To the extent provided for in a plan of reorganization, a bankruptcy court retains post-confirmation jurisdiction to determine certain disputes, especially those that arise under a plan. *See In re Terracor*, 86 B.R. 671, 676 (D.Utah 1988); *In re Johns–Manville Corp.*, 91 B.R. 225, 228 (Bankr.S.D.N.Y.1988) (Lifland, C.B.J.); *In re Tacoma Boatbuilding Co.*, 81 B.R. 248, 251 n. 1 (Bankr.S.D.N.Y.1987) (Lifland, C.B.J.); *In re Turner Bros., Inc.*, 66 B.R. 26, 27 (Bankr.E.D.Okla.1986); *In re Tri–L Corp.*, 65 B.R. 774, 778 (Bankr.D.Utah 1986); *In re Silver Mill Frozen Foods, Inc.*, 23 B.R. 179 (Bankr.W.D.Mich.1982). *See also* 5 *Collier on Bankruptcy*, ¶ 1142.01 at 1142–1—1142–6 (15th ed. 1979 & Supp.1988).

■ 6. Even without a specific retention provision in a plan, this Court has previously held that jurisdiction of the bankruptcy court continues post-confirmation as to fundamental questions of interpretation and administration of a plan. *In re Johns–Manville Corp.*, 91 B.R. at 228. As articulated in that decision, "the question of interpretation of the administration of the plan belonged in the bankruptcy court." *Id.* *See also, In re Hermitage Bldg. Corp.*, 100 F.2d 597, 599 (7th Cir. 1938); *Shores v. Hendy Realization Co.*, 133 F.2d 738 (9th Cir.1943).

7. Moreover, this Court in support of its retention of jurisdiction to enjoin an action in an non-bankruptcy forum stated as follows:

The court best equipped as well as the one properly entitled to resolve disputes of that kind was the court in which the proceeding had been conducted. As to fundamental questions of interpretation and administration such as these we think the jurisdiction of the bankruptcy court continues whether future consider-

ation of them was expressly reserved or not.

*In re Johns–Manville Corp.*, 91 B.R. at 228. (quoting *Shores v. Hendy*, 133 F.2d at 741.) *See also, In re Standard Gas & Electric Co.*, 139 F.2d 149, 152 (3rd Cir. 1943); *Evans v. Dearborn Machinery Movers Co.*, 200 F.2d 125, 128 (6th Cir.1952). However, it is clear under these circumstances, that this Court did expressly and unambiguously retain jurisdiction.

■ 8. In the same regard, it has been determined that the bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders in aid of their proper execution. *In re St. Louis Freight Lines, Inc.*, 45 B.R. 546, 551 (Bankr.E.D.Mich.1984)[9]; *In re Arctic Enters., Inc.*, 35 B.R. 978, 979 (Bankr.D.Minn. 1983).

9. Furthermore, with respect to implementation of the plan, § 1142(b) of the Code allows the bankruptcy court to issue the orders necessary for consummation of a plan and provides:

The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.

Some Courts have relied on § 1142(b) to supply a basis for general post-confirmation jurisdiction. The Court in *In re Terracor*, 86 B.R. 671 (D.Utah 1988), for example, stated that "[t]he clear intent of Section 1142(b) is ... to assure that the terms and provisions of the confirmed Chapter 11 plan are carried out until the plan is completed and a final decree is entered closing the case." *Id.* at 676. *See also, In re Coral Air, Inc.*, 40 B.R. 979, 982 (D.V.I. 1984).

**9.** "Section 1141(a) of the Code provides that confirmation binds the debtor, creditors and other parties in interest to the terms of the plan, even if a party has not accepted the plan." *In re St. Louis Freight Lines, Inc.*, 45 B.R. at 551.

(quoting Lander and Warfield, *A Review and Analysis of Selected Post–Confirmation Activities in Chapter 11 Reorganizations*, 62 Am.Bankr.L.J. 203, 208 (1988)).

10. Finally, the Court may also rely on § 105(a) of the Code which authorizes it to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" Title 11. Section 105(a) confers authority on the bankruptcy court to enjoin actions in other courts that interfere with the reorganization of the debtor, *In re Johns–Manville Corp.*, 68 B.R. at 625.

11. In a prior decision in these cases construing § 105 it was observed: "Indeed, bankruptcy courts frequently issue injunctions that limit recourse against the debtor, far beyond the date of confirmation." *In re Johns–Manville Corp.*, 68 B.R. at 625. There, it was held that the provisions of the Plan, the Injunction and the notice thereof, were constitutional and were proper and fair under the circumstances of these cases.

12. In a similar situation in these very bankruptcy cases, an injunction issued to enjoin an action brought in a non-bankruptcy forum which posed a threat to the jurisdiction of this Court, the propriety of the Confirmation Order, and the success of the reorganization. *In re Johns–Manville Corp.*, 91 B.R. 225 (Bankr.S.D.N.Y.1988). Relying on its post-confirmation jurisdiction to enforce its own decrees, to resolve disputes under the Plan, and pursuant to its retention of jurisdiction under the Plan, the non-bankruptcy action was enjoined. The exercise of this Court's continuing jurisdiction to enjoin non-bankruptcy suits that impair or violate the provisions of the Plan has become "law of the case." *See, e.g., James Burrough, Ltd. v. Sign of Beefeater, Inc.*, 572 F.2d 574, 577 (7th Cir. 1978); *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir.), *cert. denied*, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964).

13. Thus, this Court has jurisdiction to consider and determine this matter pursuant to the various provisions of Article X of the Plan, or by virtue of this Court's inherent jurisdiction to determine disputes under a plan, or pursuant to § 1142(b) or § 105(a), and in light of its prior decision on similar material facts.

## VIOLATION OF THE INJUNCTION AND THE CLAIMS RESOLUTION PROCEDURES

14. By filing their respective Actions, the Claimants have violated the provisions of the Injunction. As purported holders of an AH Claim, the Claimants are bound by the terms of the Plan and must follow the procedures set out in the Plan in order to assert their alleged claims.

15. As stated previously, the designers of the Plan were faced with a monumental task of preserving "the rights and remedies of those parties, who by an accident of their disease cannot even speak in their own interest...." *In re Johns–Manville Corp.*, 68 B.R. at 627. The success of these reorganizations will be measured by the ability of the Trust to compensate the future asbestos-health claimants. The Trust's ability to function is contingent upon compliance with the Injunction and the Claims Resolution Procedures. Thus, any violations of either of these provisions of the Plan will irreparably harm not only the newly reorganized Debtors, but also the future asbestos-health claimants.

16. However, to compel adherence to the Plan and prevent violations of the Plan, the Debtors need not demonstrate the strict standard for a preliminary injunction under Fed.R.Civ.Pro.Rule 65. "Instead, the bankruptcy court may 'enjoin proceedings in other courts when it is satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case before it.'" *In re Johns–Manville Corp.*, 91 B.R. 225, 228 (Bankr.S.D.N.Y.1988) *citing LTV Steel Company, Inc. v. Board of Education of the Cleveland City School District*, 93 B.R. 26 (S.D.N.Y.1988); *In re Neuman*, 71 B.R. 567, 571 (S.D.N.Y.1987).

17. It is clear under either standard that the Actions are in violation of the Plan "capable of repetition" [10] and must be enjoined.

## CIVIL CONTEMPT AND SANCTIONS

18. This Court has already determined that it has the constitutional authority to issue an order of civil contempt and an

---

**10.** *See, Murphy v. Hunt,* 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982).

appropriate sanction. *In re Johns–Manville Corp.,* 26 B.R. 919, 923 (Bankr.S.D.N.Y.1983). *See also,* Bankruptcy Rule 9020. Had the Claimants not moved to dismiss the Actions, *(See,* Finding ¶ 23), a *prima facie* showing could likely be made for this Court to have held the Claimants in contempt of the Plan, the Confirmation Order and the provisions of the Code. The Plan provides the procedure for filing and pursuing asbestos health claims that are clearly and unambiguously set out. There is no doubt that to assert their rights the Claimants must first file their claim with the Trust. As is set forth in the Confirmation Order, suits against *inter alia* the Debtors or their insurers are clearly prohibited.

19. The foregoing shall constitute this Court's conclusions of law.[11]

An injunctive Order implementing the foregoing has been separately entered.

---

**11.** Any finding that may more properly be considered a conclusion and any conclusion that may more properly be considered a finding shall be so construed.